MORGAN, LEWIS & BOCKIUS LLP
John A. Polito, Bar No. 253195
john.polito@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel:     +1.415.442.1000
Fax:     +1.415.442.1001

Attorneys for Plaintiff
FRUIT STREET HEALTH, PUBLIC
BENEFIT CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FRUIT STREET HEALTH, PUBLIC BENEFIT CORPORATION, a Delaware public benefit corporation<br><br>Plaintiff,<br><br>v.<br><br>VSEE LAB, INC., a Delaware corporation; and MILTON CHEN, PH.D., an individual,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, PRE-JUDGMENT REMEDIES, AND DAMAGES:**<br><br>**(1) COPYRIGHT INFRINGEMENT;**<br>**(2) TRADE DRESS INFRINGEMENT;**<br>**(3) TRESPASS TO CHATTELS;**<br>**(4) BREACH OF FIDUCIARY DUTY;**<br>**(5) UNFAIR COMPETITION.**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1             Plaintiff Fruit Street Health, Public Benefit Corporation ("Fruit Street") for their

2  Complaint against Defendants VSee Lab, Inc. ("VSee") and Milton Chen, Ph.D. (together with

3  VSee, "Defendants") allege as follows based on their personal knowledge as for themselves, and

4  on information and belief as to the acts of others:

5  **I.  INTRODUCTION**

6             1.  Telemedicine saves lives.  Even before 2020, people in need of healthcare

7  services in rural areas and far-flung geographies suffered from a lack of access to healthcare

8  providers in their communities.  Even before 2020, people working multiple jobs, who relied on

9  public transit, and who had substantial caregiver obligations often had difficulty accessing even

10 the healthcare resources that were available in their communities.  With respect to preventative

11 care, in particular, people facing these hardships often deferred or declined to pursue preventive

12 services in favor of confronting more immediate concerns, resulting in a higher incidence of

13 preventable health conditions and higher severity of those conditions.  And even people in urban

14 areas with ready access to transportation benefited from access to healthcare resources without

15 the need to drive to a medical clinic.

16            2.  In 2020, telemedicine saves lives more concretely, because it allows for the

17 provision of healthcare services while maintaining social distancing.  Providers and patients can

18 connect while at home, avoiding potential exposure to COVID-19 and freeing up the resources of

19 clinics and hospitals to be used for the benefit of individuals who may have COVID-19 and for

20 the providers treating them.

21            3.  Founded in 2014, Fruit Street provides telehealth services and licenses

22 telehealth solutions in the United States.  Fruit Street's technology allows healthcare providers to

23 monitor the health, diet, and lifestyle of their patients through HIPAA-compliant video

24 consultations, wearable devices, and mobile applications.

25            4.  Fruit Street's flagship diabetes-prevention and weight-loss program is fully

26 recognized by the Centers for Disease Control and Prevention:

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17    5.    People with diabetes and people who are severely obese are both at higher

18 risk of severe illness from COVID-19.[1] By allowing these high-risk individuals to maintain

19 social distancing, hundreds of providers who deliver care through Fruit Street's telehealth

20 services are allowing patients to lower their risk profile in this difficult time.  Fruit Street provides

21 these services under its own name and through its partnership with provider networks and

22 telehealth platforms across the country.

23    6.    Defendant Milton Chen, Ph.D., is a co-founder of Fruit Street, is a former

24 member of Fruit Street's board of directors, and until recently served as Fruit Street's Chief

25 Technology Officer (CTO).

26

27 [1] Centers for Disease Control and Prevention, "Groups at Higher Risk for Severe Illness,"
*available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-

28 higher-risk.html (last visited Apr. 7, 2020).

1    7.    Dr. Chen is also the CEO of Defendant VSee.  VSee describes itself as a

2    telemedicine platform founded in 2008.[2]  Since 2014, Fruit Street's telehealth solution has relied

3    upon technology developed by Defendant VSee and owned by Fruit Street.  On information and

4    belief, VSee developed that technology under the direction of Dr. Chen in his capacity as Fruit

5    Street's CTO.

6    8.    By March 2018, Fruit Street and VSee had agreed to begin going their

7    separate ways.  More than two years later, VSee has still not provided Fruit Street with the

8    technology and intellectual property that both parties agree belongs to Fruit Street.  As a result,

9    Fruit Street and VSee are still yoked together, against Fruit Street's will.

10    9.    VSee no longer provides the development or support resources necessary

11    for Fruit Street to timely meet its own obligations.   In the last two weeks alone, VSee has failed

12    to push certain configuration and data changes into production for a licensee, failed to provide

13    certain usage reports, and failed to fix a bug in the single sign-on code that prevents certain users

14    from accessing the Fruit Street services.

15    10.    VSee has recently announced that it has "temporarily disabled" or

16    "temporarily suspended" a number of its own products and features, as well, because of

17    operational and capacity limitations.[3]

18    11.    One such product is VSee's competing telehealth product that infringes

19    upon Fruit Street's copyrighted software and upon Fruit Street's trade dress, in violation of Fruit

20    Street's intellectual property rights and of the agreements between the two parties.

21    12.    Fruit Street brings this action to stop VSee from using Fruit Street's

22    intellectual property, to obtain all of the code, data, configuration information, and documentation

23    that Fruit Street owns (and to which it is entitled) but that VSee refuses to deliver to Fruit Street,

24    and to obtain other appropriate relief.

25

26    _____

27    [2] VSee, "About the VSee Team," *available at* https://vsee.com/aboutus/ (last visited Apr. 7, 2020).

28    [3] VSee, "VSee COVID-19 Service Alert," *available at* https://vsee.com/blog/vsee-covid-19-service-alert/ (last visited Apr. 7, 2020).

## II. THE PARTIES

13. Plaintiff Fruit Street is a Delaware public benefit corporation with its principal place of business in New York, New York.

14. Defendant VSee is a Delaware corporation with its principal place of business in San Jose, California.

15. Milton Chen, Ph.D. is the founder and CEO of Defendant VSee and the former CTO of Fruit Street. On information and belief, Dr. Chen is a California resident, and he lives in the Northern District of California.

16. At all material times, each of the Defendants was the agent, servant, employee, partner, joint venturer, representative, alter ego, or co-conspirator of the others, had full knowledge of and gave substantial assistance to the alleged activities, and in doing the things alleged, each was acting within the scope of such agency, service, employment, partnership, joint venture, representation, or conspiracy, and each is legally responsible for the acts and omissions of the others.

17. VSee and Dr. Chen are subject to personal jurisdiction in California because they are subject to general jurisdiction in this forum. VSee is headquartered in San Jose, California, and their contacts with the state are substantial, continuous and systematic. Dr. Chen is domiciled in California.

18. In addition, Defendant VSee is subject to specific jurisdiction here because it purposefully availed itself of California law, specifically by agreeing that the January 1, 2016 Fruit Street Telehealth Software Platform Development Agreement between Fruit Street and VSee (the "2016 Agreement") would "███████████████████████████████████████████████████████████████████████████████████████"

19. Dr. Chen is also subject to personal jurisdiction here for the additional reason that he was and is the alter ego of VSee, a California-based company.

20. VSee has further waived its objections to this Court's jurisdiction as for

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    "███████████████████████████████████" arising from the 2016 Agreement.

2    **III.    JURISDICTION**

3    21.    Fruit Street's first claim for relief arises under federal copyright law, and

4    Fruit Street's second claim for relief arises under federal trademark law.  Accordingly, this Court

5    has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C.

6    § 1338(a).

7    22.    Fruit Street's fourth claim for relief is a claim of unfair competition joined

8    with a substantial and related claim under federal trademark law.  Accordingly, this Court has

9    subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(b).

10    23.    This Court has supplemental subject matter jurisdiction over the pendant

11    state law claims under 28 U.S.C. § 1367, because these claims are so related to Fruit Street's

12    claim under federal law that they form part of the same case or controversy and derive from a

13    common nucleus of operative facts.

14    **IV.    VENUE**

15    24.    Venue in this District is appropriate because every Defendant is either

16    headquartered or domiciled here and Defendants committed a substantial amount of the wrongful

17    intentional acts here.  As a result, Defendants would be amenable to personal jurisdiction if this

18    District were a separate state, and therefore venue in this District is appropriate under 28 U.S.C. §

19    1400(a) and 28 U.S.C. § 1391(b).

20    25.    VSee has further waived its objections to venue in this Court as for "██████

21    ████████████████████████████████████" arising from the 2016 Agreement.

22    **V.    INTRADISTRICT ASSIGNMENT**

23    26.    Because this action alleges, among other things, claims for copyright and

24    trade dress infringement, it is an intellectual property action and may be assigned on a district-

25    wide basis pursuant to Civil L.R. 3-2(c).  While the 2016 Agreement provides that claims should

26    be filed in "██████████████████████████████," Fruit Street is filing this Complaint in

27    the San Francisco Division consistent with General Order 73's consolidation of all essential court

28

1   proceedings to the San Francisco Courthouse.

2   **VI.     FACTUAL ALLEGATIONS**

3          **A.      The Fruit Street Telehealth Platform**

4                 27.     Fruit Street provides both web-based and mobile telehealth applications.

5                 28.     The Fruit Street Telehealth Platform is a web-based application provided

6   under the Fruit Street brand and using Fruit Street's trade dress.

7                 29.     Fruit Street owns all right, title, and interest to the Fruit Street Telehealth

8   Platform, including but not limited to copyright and trade dress rights.

9                 30.     Fruit Street has registered its copyright in the Fruit Street Telehealth Portal

10  with the United States Copyright Office, and has received registration TXu 2-187-756.

11                31.     Almost all of the Fruit Street Telehealth Platform was developed by VSee

12  under contract to Fruit Street.  On information and belief, Dr. Chen directed and controlled these

13  development efforts.

14                32.     The Fruit Street Telehealth Platform currently relies upon multiple

15  components to operate:  web application code, configuration and documentation files, and one or

16  more databases.  Without each of these components, the Fruit Street Telehealth Platform does not

17  operate.

18                33.     The Fruit Street Telehealth Platform also currently relies upon multiple

19  third-party applications, including certain server code and application program interface (APIs)

20  components.  Again, the Fruit Street Telehealth Platform does not operate without these

21  components.

22                34.     One or more of the third-party applications on which the Fruit Street

23  Telehealth Platform relies are owned and controlled by VSee.

24         **B.      The Agreements Between Fruit Street and VSee**

25                35.     On May 30, 2014, Fruit Street licensed pre-existing technology from VSee

26  and began paying VSee to develop the Fruit Street Telehealth Platform and other Fruit Street

27  products.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

36.     VSee granted Fruit Street an exclusive license for certain technology developed by VSee effective January 1, 2016.

37.     Effective March 1, 2018, Fruit Street became the owner of the Fruit Street Telehealth Platform and the associated mobile applications, and Fruit Street and VSee agreed to separate the Fruit Street Telehealth Platform from the pre-existing VSee technology.

38.     These and other changes are documented in a series of agreements between Fruit Street and VSee.

**1.     The 2014 Agreement**

39.     Fruit Street's working relationship with VSee began in 2014, the year that Fruit Street was founded.

40.     Pursuant to the May 30, 2014 VSee eVisit Platform as a Service License Agreement ("2014 Agreement"), Fruit Street (then known as Welliko, Inc.) provided the " ██████ ███████████ " for the Fruit Street Telehealth Platform.

41.     Pursuant to the 2014 Agreement, VSee granted Fruit Street a nonexclusive license to the existing VSee technology and updates to that technology, and also agreed to begin building " ████████████████████████████████ " including " ███████ ███████████████████████████████████████ "

42.     VSee agreed in that same 2014 Agreement to perform design and support functions, and that members of the VSee team would fill various roles at Fruit Street including " ████████████████████████████████████ ██████████ ." On information and belief, Dr. Chen directed and controlled VSee's fulfillment of these roles and responsibilities.

43.     Fruit Street CTO Milton Chen had the additional responsibility of " ████████████████████████████ " under the 2014 Agreement.

44.     Under the 2014 Agreement, Fruit Street was to pay VSee ████████████ ████████████ and further agreed to pay VSee ██████████████████ ██████████████████ . ██████████████████████

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   ██████████████████████████████████████████████████ .

2          **2.       The 2016 Agreement**

3          45.     Effective January 1, 2016, the relationship between Fruit Street and VSee

4   changed with the execution of the 2016 Agreement, which "████████████████████" the

5   2014 Agreement.

6          46.     The 2016 Agreement distinguished between "VSee Pre-Existing IP" and

7   "Fruit Street Code."

8          47.     "VSee Pre-Existing IP" was defined as "████████████████████

9   ██████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ██████████████████████████████████████████████████████

13  ██████████████████████████████████████████████ "

14         48.     Under the 2016 Agreement, VSee was the owner of the VSee Pre-Existing

15  IP, and Fruit Street continued to hold a nonexclusive license to that technology, as in the 2014

16  Agreement.

17         49.     "Fruit Street Code" was defined as "████████████████████████

18  ██████████████████████████ ."  The "Fruit Street Platform," in turn, was

19  defined as "██████████████████████████████████ "

20         50.     VSee was identified as the owner of "████████████████████

21  ██████████ " while Fruit Street held ████████████████████████

22  ████████████████████ .

23         51.     The 2016 Agreement forbade VSee from ██████████████████

24  ██████████████████████████████████████████████████████

25  ██████████████████████████████████████████████████

26  ██████████████████████████████

27         52.     Pursuant to the 2016 Agreement, Fruit Street held all trade dress rights and

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR INJUNCTIVE RELIEF, PRE-JUDGMENT REMEDIES, AND DAMAGES

all "look and feel" rights to the Fruit Street Platform.

53.     The 2016 Agreement acknowledged that Dr. Chen had already been

"█████████████████████████████████████████████" On information and belief, Dr. Chen

directed and controlled VSee's development and support efforts under the 2016 Agreement.

54.     Under the 2016 Agreement, Fruit Street was to pay VSee ████████

██████████████████████████████████████████████████████████████████████████

█████████████████████████████████. Fruit Street was to ████████████████████

██████████████████████████████████████████████████████████████████████████

█████████████████████.

55.     Upon certain conditions, the 2016 Agreement obligated VSee to "█████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████"

56.     The 2016 Agreement included an agreement to arbitrate "█████████████

████████████████████████" but excluded "█████████████████████████████████████

███████" from the scope of the agreement to arbitrate.

**3.     The 2018 Addendum**

57.     Fruit Street and VSee subsequently entered into the March 1, 2018 Fruit

Street Health P.B.C. and VSee Lab Inc. 2018 Addendum ("2018 Addendum").

58.     The 2018 Addendum reflected Fruit Street's efforts to separate itself from

VSee, and to separate the Fruit Street Code from the VSee Pre-Existing IP.

59.     As of March 1, 2018, Fruit Street became the owner of all intellectual

property rights in the Fruit Street Code (referred to as the "Fruit Street Application Code" in the

2018 Addendum).

60.     VSee was obligated under the 2018 Addendum to deliver all Fruit Street

Application Code, separated from the VSee Pre-Existing IP (referred to as the "VSee Platform

Code" in the 2018 Addendum), by July 1, 2019.

61.     Pursuant to the 2018 Addendum, VSee agreed to continue updating both

COMPLAINT FOR INJUNCTIVE RELIEF, PRE-JUDGMENT REMEDIES, AND DAMAGES

1    the Fruit Street Application Code and the VSee Platform Code.  Fruit Street would own all rights

2    (including intellectual property rights) in and to the Fruit Street Application Code, including

3    "███████████████" and "███████" implemented by VSee, and would continue to have a

4    non-exclusive license to the VSee Platform Code.

5             62.    The 2018 Addendum did not grant VSee a license to the Fruit Street

6    Application Code.

7             63.    The 2018 Addendum ████████████████████████████████████

8    ████████████████████████████████████████████████████████████████

9    ████████████████.

10   **C.    VSee's Failure To Separate and Provide The Fruit Street Telehealth Platform
11         to Fruit Street**

12            64.    VSee did not provide the complete set of Fruit Street Telehealth Platform

13   components to Fruit Street by July 1, 2019, and still has not done so.

14            65.    Until February 2020, despite having paid VSee millions of dollars for the

15   Fruit Street Platform Technology and the associated mobile applications that Fruit Street owned,

16   VSee refused to let Fruit Street look at the Fruit Street code, and would not allow third parties to

17   review it for quality on Fruit Street's behalf.

18            66.    VSee finally began providing source code, configuration files, data, and

19   documentation to Fruit Street in February 2020, eight months after all components were to be

20   fully separated from the VSee pre-existing technology and delivered to Fruit Street pursuant to

21   the 2018 Agreement.  VSee has not yet transferred all of the components needed to operate the

22   Fruit Street Telehealth Platform and the associated mobile applications to Fruit Street.

23            67.    VSee has failed to provide complete product documentation as required

24   under the 2016 Agreement.

25            68.    Once Fruit Street was able to review the source code, Fruit Street

26   discovered that, contrary to the 2016 Agreement, VSee had inserted API secrets and other

27   Disabling Codes into the Fruit Street Telehealth Platform.  VSee has refused to remove or even to

28

document all such Disabling Codes and the means by which they can be circumvented.

69.     VSee is aware that Fruit Street, together with one of its licensees, is in the process of rolling out portions of the Fruit Street Telehealth Platform to a large private insurer with hundreds of thousands of covered members.  VSee is aware that the roll-out for the private insurer has been scheduled for completion in April 2020.  VSee has nonetheless refused both to complete the transfer of all Fruit Street Telehealth Platform components to Fruit Street and has refused to work with Fruit Street and its licensee to enable certain technological changes necessary for the rollout to the private insurer.  On information and belief, at all relevant times, VSee has been operating under the direction of Dr. Chen.

70.     Since 2018, Fruit Street has paid other contractors hundreds of thousands of dollars to perform work that VSee should have performed under the 2016 Agreement and the 2018 Addendum but was unable or unwilling to do.

71.     Despite repeated demands, VSee has been unwilling to convene a meeting among senior executives of Fruit Street and VSee to discuss and attempt to resolve Fruit Street's concerns.

72.     On April 2, VSee told the public that, because it is unable to handle the increase in usage of VSee's pre-existing technology that has occurred during the COVID-19 pandemic, it was shutting down a number of the features and services it previously provided.

**D.     VSee's Infringing Telehealth Platform**

73.     At the time that Fruit Street and VSee signed the 2014 Agreement, VSee had an existing telemedicine portal.

74.     Consistent with its obligations under the 2014 Agreement and 2016 Agreement, Fruit Street has led and guided the design of the Fruit Street Telehealth Platform, including the trade dress and user experience for the Fruit Street Telehealth Platform, which are protected by trademark and copyright laws.  For example, Fruit Street would come up with mockups and instruct designers at VSee how it wanted the platform to look in terms of color, visual design, and look and feel.  Fruit Street would regularly and iteratively review the resulting

1    output from VSee to ensure the quality and suitability of the user experience and the trade dress

2    for the Fruit Street Telehealth Platform and the associated mobile applications.

3                75.     The trade dress and user experience for the Fruit Street Telehealth Platform

4    are distinctive, similar only to the infringing VSee products discussed below.

5                76.     Despite Fruit Street's control and ownership of the design of the Fruit

6    Street Telehealth Platform, VSee's products, VSee Clinic and Enterprise VSee Clinic, closely

7    copy the trade dress and user interface of the Fruit Street Telehealth Platform.

8                77.     For example, here is an image from the Patients screen of the Fruit Street

9    Telehealth Platform.  The Fruit Street brand logo is in the upper left corner, followed across the

10   top by text for the Dashboard, Patients, Calendar, and Visits screens.  Right-justified across the

11   top of the screen are the help, message alert, chat, and sound alert toggle icons, and then the

12   pulldown image of the provider (with an optional picture) to the far upper right.  Under the

13   Member Listing: Members tab, there are four labeled columns:  Member, Age, Gender, and

14   Trackers, followed by two unlabeled columns (a thought bubble for chat and an ellipsis that

15   allows access to the patient's profile).  Each patient's name appears next to an optional patient

16   picture and above one or more optional tags; clicking on the patient's name also gave access to

17   the patient's profile, making the last, unlabeled column containing the ellipsis entirely

18   duplicative.  The Trackers column includes data from the patient's wearable devices, such as a

19   Fitbit, in colored blocks with custom icons for each category of data, such as Weight, Steps,

20   Calories Burned, Active Minutes, Blood Pressure, and Pulse.  Highlighted and emphasized text is

21   a powder blue color in bold font.  Other text is in gray across the top.  Text in the colored

22   wearable-device-data boxes are in lighter weight grey font for categories and in colored text for

23   measurement units.  All fonts are sans serif.

24

25

26

27

28

78.     Here in comparison is an image from a VSee marketing video titled "Telemedicine for COVID-19 - Enterprise VSee Clinic" posted on March 26, 2020.[4]  Just as in the Fruit Street product image, the top bar has the brand logo in the upper right, followed by the text for the Dashboard, Patients, Calendar, and Visits screens.  The identical help, message alert, chat, and sound alert toggle icons are right justified, as is the provider pull-down with optional image.  Under the Member Listing: Members tab, the same arrangement of labeled columns (Member, Age, Gender, Trackers) and unlabeled columns (the chat icon and the entirely duplicative profile icon) appears.  Patient image, name, and tags appear in the same arrangement.  The arrangement of elements in the colored boxes and the associated icons for wearable-device data are identical.  The font choices, colors, and weights are identical throughout.

---

[4] *Available at* https://www.youtube.com/watch?v=1ABpQXndiW4 (last visited Apr. 7, 2020).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

79.     In another example, here is an image from the Calendar screen of the Fruit Street Telehealth Platform.  The top bar, from the Fruit Street Logo on the left to the pulldown image of the provider (with an optional picture) on the right, is the same as in the prior example. In the My Schedule pane, the main categories are "Filter," "Division," and "Legend:".  Under Division is a number-of-minutes selector, defaulting to 15, next to the capitalized word "Minutes."  Also under Division is a checked, checkable box titled "Show consultations."  Under Legend: are a number of categories and associated colors for calendar entries, including two variations of "Open slot" (shades of blue), "Confirmed" (orange), "Completed" (green), "Deleted / Canceled" (gray), and "In progress" (salmon).  The categories under Legend: each have their own check-able check box.  On the left of the calendar, the hours are shown using a non-standard format with no space between the hour and the a.m./p.m. indication and no periods on "a.m." or "p.m."  Above the calendar are separate '<' and '>' buttons, a date range in the form of three-letter month (with no period following), seven-day range, and full year without a comma, and then a toggle-able month/week/day set of buttons above which sits a timezone indicator. Highlighted and emphasized text in the top bar and along the left side of the My Schedule pane is

COMPLAINT FOR INJUNCTIVE RELIEF, PRE-JUDGMENT REMEDIES, AND DAMAGES

1   again in bold, colored font, with other text in gray.  All fonts are again sans serif.



15          80.     Here in comparison is an image from a VSee marketing video titled "VSee

16   Clinic Provider Side Demo" posted on December 6, 2018.[5]  While the top bar is slightly different

17   in this older version of the VSee Clinic product, the logo, "Dashboard," "Patients," "Calendar,"

18   alarm bell icon and provider pulldown with optional picture are in the same spots as in the current

19   Fruit Street (and VSee) top bar.  Just as in the Fruit Street product image, under My Schedule are

20   found the main categories of "Filter," "Division," and "Legend:"  Division contains a number-of-

21   minutes selector, set at 15, followed by the capitalized word "Minutes," then followed by a

22   checked, check-able box labeled "Show consultations."  Under Legend: are found a nearly

23   identical set of categories and associated colors for calendar entries:  "Open slot" (blue),

24   "Confirmed" (orange), "Pending / Completed" (green), "Deleted / Canceled" (gray), "In

25   progress" (salmon), and "Pending" (purple).  Again, the categories under Legend: each have their

26   own, check-able check box.  On the left of the calendar, the hours are shown using a non-standard

---

[5] *Available at* https://www.youtube.com/watch?v=jANzc9wazAI  (last visited Apr. 7, 2020).

COMPLAINT FOR INJUNCTIVE RELIEF, PRE-JUDGMENT REMEDIES, AND DAMAGES

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    format with no space between the hour and the a.m./p.m. indication and no periods on "a.m." or

2    "p.m."  Above the calendar are separate '<' and '>' buttons, a date range in the form of three-

3    letter month (with no period following), seven-day range, and full year without a comma, and

4    then a toggle-able month/week/day set of buttons above which sits a timezone indicator.  Fonts

5    are sans serif and highlighted and emphasized text is in bold, colored font.



21          81.    The VSee Clinic and Enterprise VSee Clinic product reproduce the trade

22    dress and the copyrighted user experience of the Fruit Street Telehealth Platform nearly exactly.

23          82.    Because the Enterprise VSee Clinic product duplicates the trade dress of

24    the Fruit Street Telehealth Platform, the two products are confusingly similar.

25          83.    In addition to their extremely similar appearances, the products are

26    competing telehealth platforms with nearly identical features that market to individual

27    practitioners, provider groups, and enterprise customers seeking HIPAA-compliant telehealth

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR INJUNCTIVE RELIEF, PRE-JUDGMENT REMEDIES, AND DAMAGES

1   services.  Virtually all of Fruit Street's marketing occurs online; on information and belief, so

2   does VSee's.

3          84.    Both products target the United States telemedicine market—a market that

4   is rapidly expanding in light of the COVID-19 pandemic because healthcare providers in the

5   United States are making urgent telehealth licensing decisions as quickly as possible due to the

6   COVID-19 pandemic.  Fruit Street and, on information and belief, VSee, are seeing substantial

7   increases in the number of inquiries from providers seeking a telehealth solution at this time.

8          85.    On information and belief, the Enterprise VSee Clinic product is a near-

9   exact copy of the Fruit Street Telehealth Platform.

10         86.    On information and belief, the VSee Clinic product is a subset of the

11  Enterprise VSee Clinic product, and is not a separate product.

12         87.    On information and belief, VSee has been operating under the direction of

13  Dr. Chen, who also receives a direct financial benefit from the sale and licensing of the VSee

14  Clinic and Enterprise VSee Clinic products.

15         88.    VSee does not have a license to the Fruit Street Telehealth Platform, nor to

16  Fruit Street's protected copyrights and trade dress in and for the Fruit Street Telehealth Platform.

17         **E.    Dr. Chen's Breach of Fiduciary Duties**

18         89.    Dr. Chen's misconduct in directing VSee is particularly egregious since he

19  is a co-founder of Fruit Street and, until recently, served as the CTO of Fruit Street.  As CTO, Dr.

20  Chen's responsibilities included directing the technical development of Fruit Street's innovative

21  platform as well as directing VSee's transfer of the Fruit Street Telehealth Platform and

22  associated mobile applications to Fruit Street.  Instead, as discussed above, Dr. Chen directed

23  VSee to violate its contractual obligations to Fruit Street and to improperly withhold transfer of

24  components of the Fruit Street Telehealth Platform and the associated mobile applications to Fruit

25  Street.  In so doing, Dr. Chen knew that Fruit Street would be required to expend additional

26  resources in engaging contractors to complete this necessary work.  Meanwhile, Dr. Chen further

27  directed VSee to focus its efforts on developing competing products that infringed upon the

28

1   intellectual property rights of Fruit Street.

2          90.    Beyond disrupting Fruit Street's technical development, Dr. Chen also

3   improperly usurped corporate opportunities belonging to Fruit Street. As CTO, Dr. Chen was

4   responsible for expanding Fruit Street's efforts to seek funding from physician investors.

5   Obtaining investments from individual physicians is a core element of Fruit Street's business

6   model. Rather than seeking funding from a small number of venture capitalists, Fruit Street relies

7   on the investments of many physician investors to fund its work. In addition to providing vital

8   financial support to continue Fruit Street's work, this funding structure develops relationships

9   with the physicians, and allows Fruit Street to benefit from their input during product

10   development. However, because Fruit Street relies on small investments from individual

11   physicians, fundraising is a critical priority for the company that requires extensive outreach to a

12   broad array of physicians. One of Dr. Chen's key responsibilities as CTO was to conduct one-on-

13   one communications with physicians, to discuss the Fruit Street business model and platform, and

14   otherwise to facilitate additional investment commitments for Fruit Street.

15          91.    Instead of working to expand physician investments into Fruit Street,

16   however, Dr. Chen used his position as CTO to usurp these opportunities for his own personal

17   benefit by diverting available investment funds away from Fruit Street and into another company

18   under his control. On information and belief, as CTO of Fruit Street, Dr. Chen communicated

19   with numerous physicians and other potential investors interested in expanding their existing

20   investments in Fruit Street or making new investments in Fruit Street. During these

21   communications, on information and belief, Dr. Chen dissuaded investors from investing in Fruit

22   Street or recommended that they reduce their intended investments into Fruit Street.

23   Furthermore, on information and belief, Dr. Chen recommended that these investors use their

24   available funds to invest in another company that he personally controlled, This American Doc.

25          92.    For example, on or around February 5, 2018, Fruit Street's Chief Executive

26   Officer (CEO) introduced Dr. Chen to a physician interested in investing in Fruit Street. Fruit

27   Street identified the physician through its broad outreach within the physician community and had

28

already conducted a one-on-one discussion about investing in Fruit Street.  As part of the physician's due diligence prior to investing in Fruit Street, Fruit Street's CEO introduced the physician to Dr. Chen in his capacity as co-founder and CTO of Fruit Street.  As Dr. Chen understood, his responsibilities as CTO of Fruit Street included speaking with prospective investors to help them understand Fruit Street's platform and gain confidence in making an investment in Fruit Street.  On information and belief, the physician had no prior contact with Dr. Chen and had expressed no interest in investing in This American Doc.  On information and belief, however, Dr. Chen advised the physician to divert significant amounts of available investment funds into This American Doc.   As a result of Dr. Chen's solicitation, on information and belief, the physician ultimately invested $15,000 in This American Doc.  On information and belief, due to this and other instances of improper solicitation, Dr. Chen funneled hundreds of thousands of available investment funds away from Fruit Street into This American Doc.

93.     In so doing, Dr. Chen improperly exploited his role as CTO of Fruit Street and exploited the costly marketing efforts of Fruit Street in generating investment leads with the physician community.  Indeed, on information and belief, many of the physicians that communicated with Dr. Chen were existing investors interested in expanding their investments in Fruit Street and others were new potential investors who learned about the industry from social medial outreach of Fruit Street.  Dr. Chen concealed his communications with prospective investors from Fruit Street, even though Fruit Street (like many early-stage startups) was in need of additional funding, and Dr. Chen never sought permission from the Board of Fruit Street to pursue these investment leads in his personal capacity.  As a result of Dr. Chen's misconduct, on information and belief, Fruit Street was deprived of necessary financing from prospective investors as portions of those funds were diverted This American Doc.

94.     Dr. Chen's misconduct has caused and continues to cause Fruit Street significant damage including, but not limited to (i) additional expenses that Fruit Street must incur to engage contractors to conduct work that VSee was contractually obligated to perform, but which VSee refused to perform under Dr. Chen's direction; and (ii) reduction in critical

investments that Dr. Chen improperly diverted away from Fruit Street and into This American Doc.

### First Claim for Relief

### (Against All Defendants)

### Copyright Infringement

95.     Fruit Street incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

96.     Fruit Street owns a valid and enforceable copyright in the Fruit Street Telehealth Portal, which is a creative work of original authorship.  Fruit Street has registered its copyright in the Fruit Street Telehealth Portal with the United States Copyright Office as TXu 2-187-756.

97.     Fruit Street owned exclusive rights to Fruit Street Telehealth Portal at a point in time during which Defendants infringed those exclusive rights.

98.     Defendants directly infringed Fruit Street's copyright in the Fruit Street Telehealth Portal.

99.     Through the acts alleged above, Defendants have violated Fruit Street's exclusive rights to reproduce, create derivative works, and publically display the Fruit Street Telehealth Portal, and Fruit Street's right to sublicense those rights.

100.     In particular, Defendants' VSee Clinic and Enterprise VSee Clinic are reproductions of and derivative works based upon the Fruit Street Telehealth Portal.

101.     Defendants have also created marketing materials that reproduce, create derivative works from, and publically display the infringing VSee Clinic and Enterprise VSee Clinic products, including but not limited to the promotional video titled "Telemedicine for COVID-19 - Enterprise VSee Clinic" discussed above.

102.     Defendant Dr. Chen is also contributorily and vicariously liable for VSee's acts of direct infringement because he controlled, directed, intentionally encouraged, induced, or materially contributed to the reproduction, creation of derivative works, and public display

COMPLAINT FOR INJUNCTIVE RELIEF, PRE-JUDGMENT REMEDIES, AND DAMAGES

discussed above.

103.    Dr. Chen also obtained a direct financial benefit from the above alleged infringing activities while declining to exercise their right to stop it or limit it.

104.    Dr. Chen knew or should have known that reproducing, creating derivative works from, and publically displaying the infringing VSee Clinic and Enterprise VSee Clinic products infringed Fruit Street's exclusive rights, not least because he was a signatory on the 2018 Addendum transferring any remaining copyright rights in the Fruit Street Telehealth Portal held by VSee to Fruit Street.

105.    Defendants' infringement of Fruit Street's exclusive rights has caused Fruit Street irreparable injury.  Unless restrained and enjoined, Defendants will continue to commit such acts.  Fruit Street's remedies at law are not adequate to compensate it for these inflicted and threatened injuries, entitling it to remedies, including injunctive relief pursuant to 17 U.S.C. § 502 and an order impounding or destroying any and all infringing materials pursuant to 17 U.S.C. § 503.

106.    Because of the agreement between Fruit Street and VSee to arbitrate claims for money damages arising from the 2016 Agreement, Fruit Street seeks only injunctive and pre-judgment relief in this forum as to this claim.

**<u>Second Claim for Relief</u>**

**(Against All Defendants)**

**Trade Dress Infringement**

107.    Fruit Street incorporates by reference each of the allegations in paragraphs 1-29 and 31-94 of this Complaint as though fully set forth here.

108.    Fruit Street owns the trade dress for the Fruit Street Telehealth Portal.

109.    The trade dress for the Fruit Street Telehealth Portal is not functional.

110.    The trade dress for the Fruit Street Telehealth Portal is inherently distinctive.  In the alternative, the Fruit Street Telehealth Portal trade dress has acquired secondary meaning in the telehealth market.

111.    VSee's infringing trade dress is nearly identical to Fruit Street's trade dress for the Fruit Street Telehealth Portal.

112.    There is a significant likelihood of confusion between the trade dress for the Fruit Street Telehealth Portal and the trade dress for VSee's Enterprise VSee Clinic product.

113.    Both Fruit Street and VSee advertise their respective products almost exclusively online, and both are telehealth products focused on the rapidly growing US market that offer similar features.

114.    Defendants' infringement of Fruit Street's trade dress has caused Fruit Street irreparable injury.  Unless restrained and enjoined, Defendants will continue to commit such acts.  Fruit Street's remedies at law are not adequate to compensate it for these inflicted and threatened injuries, entitling it to remedies, including injunctive relief pursuant to 15 U.S.C. § 1116.

115.    Because of the agreement between Fruit Street and VSee to arbitrate claims for money damages arising from the 2016 Agreement, Fruit Street seeks only injunctive and pre-judgment relief in this forum as to this claim.

**Third Claim for Relief**

**(Against All Defendants)**

**Trespass to Chattels**

116.    Fruit Street incorporates by reference each of the allegations in paragraphs 1-29, 31-94, and 107-115 of this Complaint as though fully set forth here.

117.    No later than March 1, 2018, Fruit Street had the legal right to possess all components of the Fruit Street Telehealth Platform.

118.    Defendants intentionally interfered with Fruit Street's possession of all components of, and refused to provide all of the components, of the Fruit Street Telehealth Platform and the associated mobile applications.  Defendants' trespass caused damage to the integrity and functionality of the Fruit Street Telehealth Platform and the associated mobile components.  Fruit Street did not consent to Defendants' interference and trespass.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

119.    Defendants will continue to commit such acts, potentially hindering Fruit Street's ability to continue to serve its existing clients and to attract new clients, which would prevent Fruit Street from using the Fruit Street Telehealth Platform and the associated mobile applications for its intended purpose.

120.    Defendants' trespass therefore threatens to cause irreparable harm to Fruit Street, for which Fruit Street has no adequate remedy at law.

121.    Because of the agreement between Fruit Street and VSee to arbitrate claims for money damages arising from the 2016 Agreement, Fruit Street seeks only injunctive and pre-judgment relief in this forum as to this claim.

**Fourth Claim for Relief**

**(Against Dr. Chen)**

**Breach of Fiduciary Duty**

122.    Fruit Street hereby incorporates each of the allegations in paragraphs 1-29, 31-94, and 107-121 of this Complaint as though fully set forth here..

123.    As CTO of Fruit Street, Dr. Chen owed Fruit Street fiduciary obligations of good faith, loyalty and care.

124.    Dr. Chen breached his fiduciary duties by directing VSee to improperly withhold transfer of Telehealth Platform components to Fruit Street and by directing VSee to infringe intellectual property rights of Fruit Street.

125.    Dr. Chen further breached his fiduciary duties by usurping corporate opportunities for himself, including by diverting available investment funds away from Fruit Street and into other companies under his personal control.

126.    As a result of Dr. Chen's breach of his fiduciary duties, Fruit Street has sustained and will continue to sustain damages.

**Fifth Claim for Relief**

**(Against All Defendants)**

**Unfair Competition**

127.    Fruit Street incorporates by reference each of the allegations in paragraphs 1-29, 31-94 and 107-126 of this Complaint as though fully set forth here.

128.    Defendants have engaged in unlawful business acts or practices, including violation of the Lanham Act, trespass to chattels, and other illegal acts and practices as alleged above, all in an effort to gain unfair competitive advantage over Fruit Street.

129.    Dr. Chen has additionally engaged in unlawful business acts or practices by breaching his fiduciary duties to give himself the companies he controls unfair advantage over Fruit Street.

130.    These unlawful business acts or practices were committed pursuant to business activity related to providing a telehealth product offering.

131.    The acts and conduct of Defendants constitute unlawful and unfair competition as defined by California Bus.  & Prof.  Code § 17200, et seq.

132.    As a result of such unfair competition, Fruit Street also have suffered irreparable injury and, unless the Court enjoins Defendants from such unfair competition, will continue to suffer irreparable injury for which Fruit Street has no adequate remedy at law.

133.    Defendants should be compelled to restore any and all benefits they may have obtained in violation of California Business & Professions Code § 17200 et seq., including, but not limited to, releasing the remainder of the components of Fruit Street Telehealth Platform and associated mobile applications to Fruit Street, and should be enjoined from further unlawful and unfair business practices.

**PRAYER FOR RELIEF**

WHEREFORE, Fruit Street respectfully prays for the following:

A.      For a preliminary and permanent injunction restraining Defendants, their officers, agents, servants, employees, and attorneys, and those in active concert or participation

1    with any of them from further sales and licensing of the infringing software;

2            B.      For an Order impounding copies of the infringing software;

3            C.      For damages to be proven at trial;

4            D.      For an Order awarding Fruit Street its attorneys' fees and costs; and,

5            E.      For an Order awarding Fruit Street such other and further relief as the

6    Court deems just and proper.

7

8

9    Dated: April 8, 2020                          MORGAN, LEWIS & BOCKIUS LLP
                                                    John A. Polito
10

11
                                                    By: _____/s/ John A. Polito_____
12                                                      John A. Polito
                                                        Attorneys for Plaintiff
13                                                      Fruit Street Health, Public Benefit
                                                        Corporation
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DEMAND FOR JURY TRIAL**

2

Pursuant to Fed. R. Civ. Proc. 38(b), Plaintiff Fruit Street Health, Public Benefit

3

Corporation demands a trial by jury on all issues so triable.

4

5

Dated: April 8, 2020                                   MORGAN, LEWIS & BOCKIUS LLP
                                                        John A. Polito

6

7

                                        By: _____/s/ John A. Polito_____

8

                                              John A. Polito
                                              Attorneys for Plaintiff
9                                             Fruit Street Health, Public Benefit
                                              Corporation

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28